UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| ANTHONY HARRIS, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 13-CV-2105 |
| ) | |
| RICK HARRINGTON, Warden, ) | |
| ) | |
| Respondent. ) | |

## OPINION

On May 10, 2013, Petitioner, Anthony Harris, submitted a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) to this court. On May 30, 2013, Petitioner paid the $5.00 filing fee and Petitioner's Petition Under § 2254 (#1) was therefore considered filed in this court. Petitioner also filed a Motion to Stay in Abeyance (#3). On December 20, 2013, Respondent filed his Answer (#10) to the Petition and the state court record (#11).

This court has carefully reviewed the arguments of the parties and the lengthy exhibits filed in this case. Following this careful and thorough review, Petitioner's Motion to Stay in Abeyance (#3) is DENIED, and Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

## FACTS

In August 2007, Petitioner was found guilty following a jury trial of robbery and three counts of aggravated criminal sexual assault in the circuit court of Champaign County. In September 2007, Circuit Judge Thomas J. Difanis sentenced Petitioner to one consecutive

term of 15 years for robbery and three consecutive 30-year terms for aggravated criminal sexual assault, for a total sentence of 105 years in the Illinois Department of Corrections.

Petitioner appealed and raised two issues: (1) the trial court erred in failing to question the jurors during voir dire in compliance with Illinois Supreme Court Rule 431(b) regarding the jurors' understanding of the four basic constitutional guarantees afforded criminal defendants at trial;[1] and (2) the court erred in allowing hearsay testimony at trial. The Appellate Court, Fourth District, rejected Petitioner's arguments and affirmed. *People v. Harris*, Case No. 4-07-0821 (February 3, 2009) (unpublished order). The Illinois Supreme Court denied Petitioner's petition for leave to appeal (PLA) but issued a supervisory order directing the appellate court to vacate its order and reconsider in light of *People v. Glasper*, 917 N.E.2d 401 (Ill. 2009). The appellate court concluded that *Glasper* did not change the result and again affirmed. *People v. Harris*, Case No. 4-07-0821 (July 10, 2010) (unpublished order).

In doing so, the appellate court set out the facts as follows:[2]

E.P. testified she was chaining her bicycle to a rack outside her college

---

[1] Rule 431(b) states that during voir dire "[t]he court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her." Ill. S. Ct. Rule 431(b).

[2] This court notes that, as to factual matters, "[t]he state court's factual determinations are entitled to a presumption of correctness, and the petitioner has the burden of overcoming this presumption by clear and convincing evidence." *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012).

2

apartment on January 23, 2005, when defendant came up behind her, put his hands over her eyes, and placed what defendant told her was a gun against her back. Defendant asked her for money. However, E.P. told him she did not have any money with her. Defendant said she must have money in her apartment. She unlocked the door to her apartment, and they went into her bedroom. None of her roommates saw the two enter the apartment. E.P. showed defendant she did not have any money in her purse.

Defendant told her to get on the bed. E.P. laid facedown on the bed, with her legs on the floor. Defendant unbuttoned her jeans and pulled them down around her thighs. He attempted to insert his penis into her vagina, but it did not go in. Defendant ordered her to perform oral sex on him. After approximately 30 seconds of oral sex, defendant again touched her vagina. E.P. testified that she pleaded with defendant that she was a virgin. Defendant then inserted his penis into her vagina.

E.P testified she offered defendant her automatic teller machine (ATM) card and personal identification number (PIN) in hopes defendant would leave. She told defendant she had about $4,000 in her bank account. Defendant took the ATM card and left. Later that day, defendant withdrew $400 from E.P.'s bank account using her ATM card.

E.P.'s testimony was corroborated by Nurse Guthrie, who testified E.P. exhibited tissue trauma in her vaginal area.

Detective Duane Maxey testified defendant initially denied robbing, having sex with, or even knowing E.P. However, at trial, defendant claimed he engaged in consensual sex with E.P. The parties stipulated defendant's DNA was found on E.P.'s jeans.

Defendant took the stand and testified. According to defendant's testimony, he knew E.P. and had spoken with her at campus bars. Defendant explained he had also previously been to her apartment. One night after the bars closed, he showed up at her apartment, and she let him in. They talked for a while in her bedroom, but nothing sexual took place.

On the day in question, defendant was driving around campus when he saw E.P. near her apartment. Defendant struck up a conversation with her while she chained up her bike. They talked for 5 to 10 minutes, and then defendant asked if they could go inside because he was cold. E.P. hesitated because her roommates were home. Defendant explained she did not want anyone to know she was involved with someone of his race. E.P. is Caucasian, and defendant is African-American. They went inside, and she took defendant into her bedroom.

According to defendant's testimony, they laid in bed together and talked about a number of subjects, including interracial dating. Defendant testified that he asked her if she had ever "done it" before, and she said no. Defendant explained they kissed and "fooled around" and then he asked E.P. if she

4

wanted to have sex. Defendant suggested oral sex, and E.P. said she would try. However, defendant denied putting his fingers or penis in E.P.'s vagina.

Afterward, defendant told E.P. he needed rent money. E.P. said he could borrow some money and gave him her ATM card and PIN. Defendant testified he only withdrew the $400 he needed for rent. He explained he did not return E.P.'s card because he picked up his cousin and decided to go drinking instead.

*Harris*, Case No. 4-07-0821, at pp. 2-4.

The appellate court then found that Petitioner's argument that the trial court failed to comply with the mandates of Illinois Supreme Court Rule 431(b) had been forfeited. *Id.* at pp. 5-6. The court stated that Petitioner's trial counsel did not object at the time of the trial court's error and, in addition, his post-trial motion did not allege the court failed to comply with Rule 431(b). *Id.* The appellate court, however, conducted a lengthy review of the issue under the plain-error doctrine. *Id*. at pp. 6-15. The court concluded:

After considering the issue in light of Glasper, we find the trial court did not fully comply with Rule 431(b) and that failure to comply constituted error. However, because (1) all four principles were addressed at the beginning of voir dire, (2) the jury was given an instruction on each principle except defendant's right not to testify, and (3) defendant testified during trial, we cannot say the court's error was so serious that it affected the fairness of defendant's trial. [*People v. Magallanes*, 921 N.E.2d 388, 412 (Ill. App. Ct.

5

2009).] As a result, we conclude the court's error did not amount to plain error. *Id.* at pp. 14-15. The court also concluded that any error in admitting Guthries's testimony concerning statements made by E.P. was harmless and did not prejudice defendant. *Id.* at pp. 15-20.

Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court. The PLA was denied on January 26, 2011.

In October 2011, Petitioner, through counsel, filed a petition for relief under the Illinois Post-Conviction Hearing Act. In November 2011, the trial court summarily dismissed the petition as frivolous and patently without merit. Petitioner appealed and argued (1) a trial court may not *sua sponte* dismiss a post-conviction petition written and filed by counsel as frivolous and patently without merit, and (2) Petitioner's post-conviction petition was not frivolous or patently without merit. On August 21, 2012, the Illinois Appellate Court, Fourth District, affirmed. *People v. Harris*, Case No. 4-11-1015 (unpublished order). The appellate court rejected Petitioner's first argument, concluding that the trial court could properly summarily dismiss Petitioner's post-conviction petition even though it was written and filed by counsel. *Id.* at p. 7. The appellate court then concluded, on the merits, that Petitioner's petition was frivolous and patently without merit. *Id.* at p. 9. Specifically, the court concluded that Petitioner's arguments that he was denied the effective assistance of trial counsel and appellate counsel were without merit, based upon the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at pp. 8-15. Petitioner filed a PLA which was denied on November 28, 2012.

6

On April 8, 2013, Petitioner filed a successive post-conviction petition, arguing that his trial counsel was ineffective for failing to secure a preliminary hearing on two of the four charges against him, charges which were added on the day of trial. The trial court denied the petition on April 23, 2013, and Petitioner's appeal remains pending in the Illinois Appellate Court, Fourth District.

ANALYSIS

I. MOTION TO STAY IN ABEYANCE

On May 10, 2013, Petitioner filed a Motion to Stay in Abeyance (#3). Petitioner asked this court to stay proceedings on his federal habeas petition pending the completion of the state court proceedings regarding his successive post-conviction petition. Petitioner asked for this stay so he could raise these issues in his federal habeas case.

In response, Respondent argued that a stay is unwarranted in this case. This court agrees with Respondent that a court generally may stay habeas proceedings "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). In limited circumstances, a stay might be warranted to permit a petitioner to exhaust state court remedies pertaining to a claim raised in a habeas petition. *See Rhines*, 544 U.S. at 277; *Dolis v. Chambers*, 454 F.3d 721, 724-25 (7th Cir. 2006). In *Rhines*, the Supreme Court stated that a "mixed" petition, one which includes some claims that have been exhausted in the state courts and some that have not, can appropriately be stayed where there was good cause for the petitioner's failure to exhaust his claims first in state court and the unexhausted claims are not plainly meritless. *Rhines*, 544 U.S. at 277-78. Respondent is correct that

7

Petitioner did not file a "mixed" petition. Petitioner has only raised claims in his Petition under § 2254 that have been exhausted. Therefore, the decision in *Rhines* does not apply and there is no need for a stay in this case. This court additionally notes that, regarding Petitioner's unexhausted claims raised in his successive post-conviction petition which remain on appeal, it has no difficulty concluding that Petitioner has not shown good cause for his failure to raise the claims in a timely manner in state court and has also not shown that the claims are not plainly meritless. For all of these reasons, Petitioner's Motion to Stay in Abeyance (#3) is DENIED.

## II. PETITION UNDER 2254

Petitioner's Petition (#1) was filed in this court on May 10, 2013. Petitioner listed six grounds for relief, but this court agrees with Respondent that Petitioner is actually raising three claims: (1) the trial court erred by failing to question prospective jurors under Illinois Supreme Court Rule 431(b); (2) trial counsel was ineffective for failing to (a) request that the trial court comply with Illinois Supreme Court Rule 431(b); (b) argue that Petitioner's sentence was excessive under Illinois law; (c) argue that Petitioner's sentence violated the Illinois Constitution's proportionality clause; and (d) challenge the constitutionality of Illinois's speedy trial statute; and (3) appellate counsel was ineffective for failing to raise subparts (b)-(d) of Claim 2 on direct appeal. Petitioner also filed a Motion to Request Counsel (#2), which was denied on June 17, 2013.

On December 20, 2013, Respondent filed his Answer (#10) and also filed the state court record (#11). Respondent argued that Petitioner is not entitled to relief under § 2254.

8

Because Petitioner filed his habeas petition after April 24, 1996, the petition is reviewed pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA "imposes a highly deferential standard for reviewing claims of legal error by the state courts: A writ of habeas corpus may issue only if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by'" the United States Supreme Court. *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013), *quoting* 28 U.S.C. § 2254(d)(1). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009), *quoting Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999).

### A. GROUND ONE - FAILURE TO COMPLY WITH RULE 431(b)

Petitioner has argued that the trial court's failure to comply with Illinois Supreme Court Rule 431(b) denied him his substantial right to a fair trial and a fair and impartial jury. Respondent contends that this claim in non-cognizable because it merely challenges the state appellate court's interpretation of a state court rule.

A state prisoner may obtain federal habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see, e.g., Rivera v. Illinois*, 556 U.S. 148, 158 (2009). Thus, habeas corpus is

"unavailable to remedy errors of state law." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002), *citing Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. "The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under *federal* law can the federal court intervene." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (emphasis added). There is no federal right to have potential jurors questioned in the manner set out in Illinois Supreme Court Rule 431(b), and Petitioner has relied solely on Rule 431(b) in making his argument. A violation of Rule 431(b) does not implicate a fundamental right or constitutional protection, and, instead, only involves a violation of the Illinois Supreme Court's rules. *Rosario v. Akpore*, ___ F. Supp. 2d ___ 2013 WL 4780099, at *9 (N.D. Ill. 2013). This court therefore agrees with Respondent that, because Petitioner's claim "rises and falls solely on questions of state law and does not implicate any federal due process rights, it is not cognizable on habeas review." *See Rosario*, 2013 WL 4780099, at *9.

### B. GROUND TWO - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner has also claimed that he was denied the effective assistance of counsel. To establish a claim for ineffective assistance of counsel, Petitioner must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. Under *Strickland* "[j]udicial scrutiny of counsel's performance is highly deferential, and under AEDPA we

defer to the state court's application of *Strickland* on federal habeas review, meaning that our evaluation of counsel's performance is doubly deferential." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (internal quotation marks omitted). This court asks not whether the state court's *Strickland* determination was correct, but rather only whether it was reasonable. *See Harrington v. Richter*, ___ U.S.___, 131 S. Ct. 770, 785 (2011).

The Illinois Appellate Court set out the applicable standard and affirmed the summary dismissal of Petitioner's claims of ineffective assistance of counsel. Because the state appellate court considered and rejected Petitioner's ineffectiveness claims on the merits, Petitioner must show that the court's resolution constituted an unreasonable application of *Strickland*.

1. RULE 431(b)

Petitioner's first claim is that his counsel was ineffective for failing to object to the trial court's failure to comply with Illinois Supreme Court Rule 431(b). Petitioner has argued that, by failing to object at trial, his counsel forfeited the issue on direct appeal, causing the appellate court to review the trial court's noncompliance under a plain error analysis rather than a harmless error analysis. In denying this claim, the state appellate court rejected Petitioner's argument that he would have succeeded on the claim if his counsel had raised it in the trial court. Relying on *Glasper*, the appellate court explained that, under Illinois law, a reviewing court will not grant relief on a Rule 431(b) claim where the evidence of guilt is overwhelming and, therefore, the error is harmless. *Harris*, Case No. 4-11-1015, at pp. 14-

15, *citing Glasper*, 917 N.E.2d at 419. The court discussed the evidence of Petitioner's guilt presented at trial, including E.P.'s testimony, the corroborating testimony presented by other witnesses, the DNA evidence, and the fact that Petitioner's "changing story throughout the proceedings further supported a finding of his guilt." *Id.* at pp. 14-15. The appellate court then concluded the evidence of Petitioner's guilt was overwhelming so the Petitioner would have been unable to succeed on appeal under a harmless error analysis. *Id.* at p. 15. The court therefore concluded that trial counsel did not provide ineffective assistance by failing to object at trial to the court's error regarding Rule 431(b). *Id.* at p. 15.

After careful consideration, this court concludes that the appellate court's decision on this issue was a reasonable application of the *Strickland* standard and was not contrary to clearly established federal law. The court reasonably determined that the evidence against Petitioner was overwhelming and that Petitioner's counsel could not have been ineffective because Petitioner's Rule 431(b) claim would have failed even if trial counsel had objected. The court's ruling was a reasonable application of *Strickland* because, under *Strickland*, Petitioner could not show that he was prejudiced by his counsel's failure to object at trial.

## 2. EXCESSIVE SENTENCE

Petitioner next argued that his trial counsel was ineffective for failing to seek reconsideration of his sentence because it exceeded the statutory maximum for aggregate sentences. The appellate court rejected this argument and explained:

> Section 5-8-4(c)(2) of the Unified Code provides when a defendant is sentenced for offenses occurring as part of a single course of conduct, the

12

> defendant's aggregate sentence cannot exceed the sum of the maximum terms authorized under section 5-8-2 of the Unified Code for the two most serious felonies involved. 730 ILCS 5/5-8-4(c)(2) (West 2006). Here, the jury convicted defendant of three counts of a Class X felony. Section 5-8-2 authorizes a judge, upon finding certain aggravating factors present, to sentence a defendant convicted of a Class X felony to a term of "not less than 30 years and not more than 60 years." 730 ILCS 5/5-8-2(a)(2) (West 2006). Accordingly, section 5-8-2 authorized a maximum term of 120 years for defendant, and the 105-year sentence defendant received fell within the permissible range. Thus, trial counsel was not ineffective by failing to object or seek reconsideration of defendant's sentence.

*Id.* at pp. 9-10. The appellate court reasonably determined that an objection to the sentence on the ground that it was in excess of the statutory maximum could not have been successful. *See People v. Myrieckes*, 734 N.E.2d 188, 191-92 (Ill. App. Ct. 2000) (holding that maximum aggregate of consecutive terms was 120 years). Therefore, the court reasonably rejected Petitioner's claim of ineffective assistance of counsel based on *Strickland*.

### 3. PROPORTIONALITY CLAUSE

Petitioner has also claimed that his trial counsel was ineffective because he failed to seek reconsideration of Petitioner's sentence as violative of the Illinois Constitution's proportionality clause. The appellate court found this claim was without merit. *Harris*, Case No. 4-11-1015, at pp. 10-11. The court pointed out that, to succeed on a proportionate-

13

penalties claim, "a defendant must show that either the penalty imposed (1) is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community, or (2) differs from the penalty imposed for an offense containing the same elements." *Id.*, at p. 10, *citing People v. Sharpe*, 839 N.E.2d 492, 517 (Ill. 2005). The appellate court stated that, contrary to Petitioner's assertion, his sentence was not "cruel, degrading, or so wholly disproportionate" to shock the moral sense of the community. *Id*. The court noted that the evidence showed that Petitioner forced his way into E.P.'s apartment and then robbed and raped her. *Id.* In addition, Petitioner's criminal record included convictions for three prior sex offenses, a robbery and assault/bodily harm charge, and four additional criminal convictions. *Id.* The court also stated that Petitioner had not shown that his penalty differed from the penalty imposed for an offense containing the same elements. *Id.* The court concluded that Petitioner's sentence did not violate the proportionality clause so that his trial counsel was not ineffective for failing to challenge it on this basis. *Id.* at p. 11.

This court agrees with Respondent that, because the state appellate court reasonably determined that counsel was not deficient for not raising a proportionality argument that would have failed under state law, Petitioner's *Strickland* claim fails. The appellate court's rejection of this argument was clearly not an unreasonable application of *Strickland*.

### 4. SPEEDY TRIAL

Petitioner has also claimed that his trial counsel was ineffective for failing to challenge the constitutionality of Illinois's speedy trial statute. He contends that "if a person

14

is taken into custody on an Illinois warrant but serves time in a different state, then he is not afforded any rights whatsoever under the Illinois" speedy trial statue. The appellate court soundly rejected this argument. The court stated that it agreed with the State that it was "incongruous to provide defendant the protection of the speedy-trial provisions when, by refusing to waive extradition, defendant manifested the clear intent to prevent his return for trial in Illinois." *Harris*, Case No. 4-11-1015, at p. 11. The court noted that Petitioner was charged by information in August 2005. *Id.* Petitioner was arrested in Tennessee on August 7, 2006, based on the warrant issued in this case. *Id.* Petitioner refused extradition, so a governor's warrant was completed. *Id.* On September 18, 2006, Petitioner was sentenced to a term of incarceration in the Tennessee Department of Corrections and was released from custody on May 9, 2007. *Id.* at pp. 11-12 His trial on the charges in this case began on July 30, 2007. *Id.* at p.12. The court stated that "[b]y refusing to waive extradition, defendant chose to stay in Tennessee rather than return to Illinois on these charges" and "[a]ccordingly, he cannot now challenge Illinois' speedy trial statute." *Id.*

This court concludes that the appellate court's determination of this issue was a reasonable application of the *Strickland* standard. Obviously, Petitioner's counsel could not have been ineffective for failing to raise this plainly meritless argument.

C. GROUND THREE - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner has also argued that his counsel was ineffective on direct appeal because counsel did not argue that his trial counsel was ineffective for failing to raise the sentencing and speedy trial arguments. The appellate court rejected this argument, stating that

15

"[b]ecause we have already concluded the underlying issues defendant raised are without merit, we conclude appellate counsel did not provide ineffective assistance when counsel failed to raise the issues on appeal." *Id.* at p. 15. This court concludes that the appellate court's ruling on this issue was a reasonable application of the *Strickland* standard. There is no ineffective assistance of appellate counsel where the claim would have failed if counsel had raised it. *See McNary v. Lemke*, 708 F.3d 905, 921 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 136 (2013). Because the appellate court reasonably concluded that Petitioner's claims of ineffective assistance of trial counsel were without merit, this claim fails as well.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final judgment adverse to a habeas petitioner. A petitioner may appeal a district court's denial of a writ of habeas corpus only when the petitioner has been issued a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1). To obtain a COA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

This court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right. Therefore, this court concludes that a COA is unwarranted.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Stay in Abeyance (#3) is DENIED.

(2) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DENIED.

(3) A certificate of appealability is DENIED.

(4) This case is terminated.

ENTERED this <u>1st</u> day of <u>April</u>, 2014

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE